# UNITED STATES DISTRICT COURT.

## In the matter of ABRAHAM B. CLARK, a bankrupt.

On application by an attorney for compensation out of the fund in the hands of the assignee, for services rendered by him at the request of an involuntary bankrupt in and about defending against the petition, preparing schedules, &c. *Denied.* Upon the petition of an attorney to be paid for services rendered by him, out of the fund in the hands of the assignee, accompanied by the certificate of the register in charge that such services were beneficial to the estate, and that the amount claimed was reasonable and just, followed by the written approval of the assignee, the court will order payment accordingly.

*Southern District of New York.*

At chambers, 4 Warren street, in the city of New York, in said district, on the 9th day of January, A. D., 1872.

I, the undersigned, register in charge of the above entitled matter, do hereby certify and report that on the 27th day of October last a claim against the assignee of the said estate for professional services was filed with me by Mansfield Compton, Esq., amounting to the sum of $1,000, upon the back of which said claim was indorsed the words and figures following:

"I the undersigned, object and disallow the foregoing claim, and require evidence to be produced to establish the same, and I apply to the register for an order for the examination of the claimant and his witnesses touching his claim. The said claim was presented to me this 27th day of October, 1871. John S. BEECHER, assignee of A. B. Clark, by C. W. Bangs, his attorney, *pro hac vice*," which said claim with said indorsements thereon are hereto annexed.

That on the 6th day of November, aforesaid, I received a written request from the said Bangs, reciting that said

Compton had presented the claim aforesaid to the said assignee, and that he had been served with a notice by said Compton, that the examination of said claim would be proceeded with, before the register, on the 8th day of November, 1871, at 11 A.M., and that he was advised that John J. Monell and Richard H. Corbett are each of them necessary witnesses for the assignee on the hearing of said claim, and applying for a summons or order for the examination of said witnesses returnable on the 8th day of November, at 11 A. M., at the office of said register, " and the assignee thereby raised the point, that it was the duty of the register upon said application to issue the summonses, or order thereby applied for, and that should the register decline to issue such summonses or order, the register was requested to certify to the court the point so raised"—which said notice is hereto annexed.

That I did not issue such summons or order as so requested not thinking it necessary to bring said Corbett or the said Monell down from his residence at Newburgh, on that day, for the reasons hereinafter stated.

That on the 8th day of November aforesaid, at 11 A.M., the said Compton appeared before me, and the said assignee also appeared by F. M. Bangs, Esq., his counsel. That the said Bangs thereupon asked for an adjournment alleging as a ground thereof, " that certain creditors had filed a protest against any attorney's fees being allowed the assignee, and that the assignee had taken measures to call the creditors together and had notified the protesting creditors, that they might if they chose employ attorneys and counsel to attend the trial of this claim, and that such protesting creditors did not appear, and that there was no proof that M. Compton had notified any of the creditors of his claim, that thereupon the assignee had not thought it expedient to employ counsel at his own expense nor to pledge the estate to meet such expenses"—Mr. Bangs further stated, that he appeared only for the purpose of making that point.

I overruled this application, stating as a reason therefor, that "I should not pay any attention to such a protest save to execute the accounts of the counsel carefully, and allow them for all services properly rendered to the estate, the full going prices usually charged by competent counsel for similar services. That I did not think that a ground of adjournment, and if the assignee did not take care of the estate by a proper defense, I should do my best to supply the omission."

The said Bangs thereupon renewed his application for a postponement of said hearing, alleging as a ground therefor, that "he had applied to the register for an order that the said Corbett and Monell appear as witnesses for the said assignee, on this hearing, and that said application had not been granted."

I denied this application also, stating as a reason therefor, "1. That the grounds alleged therefor, were not consistent with those above alleged for such postponement. 2. That M. Compton had informed me, that when he served the notice for this hearing upon Mr. Bangs, he was informed by him, that he should not dispute the amount of the bill, but only raise the point of law, and that M. Compton had also informed him, that his testimony would probably occupy the whole of one sitting." To this Mr. Bangs urged, that "the general orders required the register to sit six hours, and he denied, that it would require six hours, to take the testimony on the part of M. Compton."

I then decided that as Mr. Corbett had come in and was present, and could be examined by Mr. Bangs, if the time should permit, I would go on and take the testimony of the witnesses who were present as far as the same could be done at one session."

Thereupon Mr. Bangs, stated, that he now appeared for Hardy, Blake & Co., and "demurred to the bill on its face."

But I decided, that I would take the testimony and pass. upon all these questions at the close of it.

In the matter of Clark.

And thereupon Mr. Bangs proceeded to put his said objection in the nature of a demurrer to the bill of items of M. Compton's claim, into writing, and having done so, handed me two papers, both of which are hereto annexed, asking me to certify the point so raised to the court.

I decided that, "under the 11th general order the pendency of such an issue before the judge ought not to suspend or delay the proceedings in this case before the register. That it would not be a convenient practice to send the case up till the testimony was in, unless, indeed, it should be lengthy, in which case I might think it proper to send it up before;" and thereupon the said Bangs left. I therefore proceeded and took the testimony of the said Compton and the testimony of Balestier which are hereto annexed.

. And I submit the two points above raised by the said Bangs, without comment.

And touching the said claim of the said Compton, I submit that I am unable to see, from the testimony, any privity of contract between the assignee and the claimant. The only ground upon which his claim can rest is, the provision of the act itself. The services claimed were, for resisting the petition filed againt the bankrupt; for services while the bankrupt was under examination before register; for services in preparing schedules, and for other services in settling conflicting claims and rights between the bankrupt and the assignee. They are services that are rendered in almost every case of involuntary bankruptcy, and if allowed here, they must be allowed in every similar case. The question, therefore, becomes important, and with a view of obtaining a careful consideration of it, I beg to call the attention of the court to what it seems to me, must be the effect of rejecting this and similar claims.

The bankrupt's first notice of proceedings in bankruptcy against him is, the service of the order to show cause why he should not be adjudged a bankrupt.

The moment of that service, is the moment that fixes his

*status* with regard to his property. That moment his property, if afterward adjudged a bankrupt, becomes the property of the assignee thereafter to be appointed. He has, therefore, nothing with which he may retain counsel, call witnesses, or assist himself in his defense ; yet, the 41st section of the act provides, that he may appear in court and defend. It further provides that, in case he is successful in his defense, he may have costs of his antagonist. Clearly this implies the right—a right in virtue of the very terms of the act itself—to retain and be aided by counsel. There is no presumption of law that counsel will serve, or witnesses attend, without compensation. Where shall the money to defray such expenses come from ? It must come from the property —what should be the assets—of the bankrupt. It will be taken before or after the adjudication. It will be taken either stealthily by the bankrupt, or openly by order of the court. There can be no doubt, as to which of these two courses will most promote the public interest and the wholesome administration of the law. It will not answer this view to say, that the law presumes all men honest, that the law will not presume that a man will commit a fraud or violate a law. It is enough to say, that good legislation will not place a man under temptations to commit a wrong, which experience shows the mass of mankind have not the virtue to resist.

It is true, we must submit to the law as we find it ; but I think it clear, that if the bankruptcy act will bear the construction contended for, it ought to be adopted.

Upon the question then of the true construction of the act, it would seem, that congress must have intended that the costs and expenses of the bankrupt in his defense, and other proceedings should be paid out of the proceeds of his estate.

A court will be reluctant to hold, that the law making power while expressly providing, that a party may appear in court and defend himself by the aid of counsel and witnesses, intended in the same act to deprive him of all the

means of doing so. The fact, that no provision is made for withholding from the assets to be handed over to the assignee sufficient to pay these costs and expenses, warrants us in looking sharply to the act to find from what source it was intended, that such costs and expenses should be paid. We find in section 28, a provision for paying out of the fund "the fees, costs and expenses of suits and the several proceedings in bankruptcy under this act." This language would seem to be broad enough to cover the case before us. The words "fees, costs and expenses" are not limited to the side of the creditors or the assignee nor yet, to the officers of the court. It is the daily practice of allowing the counsel for the petitioning creditor to be paid out of the fund, for his services in the bankruptcy court; on what express words of the act are similar fees for similar services denied to the counsel for the bankrupt? Certainly none. By whatever argument these words of the act are made to embrace the compensation of counsel for the petitioning creditor the same argument will apply *a fortiori* to the compensation of counsel for the bankrupt.

I submitted the question herein presented to this court in 1868, in the case of *Hirschfield*, (1 *N. B. R.*, 195). In that case, the bankrupt's attorneys had not thought it right to take from the funds of the bankrupts their compensation in advance for filing his petition, &c., but had come in after the estate had gone into the hands of the assignee and asked to be paid from the fund. I then submitted to the court as a reason for allowing it, that "the funds from which the solicitor is paid must come from what should be the assets of the bankrupt, or from his future earnings. In pursuing the course here pursued, the solicitor submits the amount of his compensation to the court under the eye of the creditors. In the course ordinarily pursued, he obtains his compensation from the same fund, the amount being measured by the good feelings of the bankrupt, and under some temptation to give him a larger sum than the creditors would sanction, or the

court might think a just compensation. If the act will bear this construction, it would seem to tend to a better practice than that which it is believed now generally prevails." I recur to these remarks now, only to say that the experience of three years has only deepened the impression then expressed—and since the case of *Comstock & Young*, (5 *N. B. R.*, 191), in which one of our ablest judges has taken the same view here urged, I have thought it right to submit the question again, asking for a careful reconsideration of the question.

Should the court think the views here expressed, well taken, I recommend that an order be entered, allowing the claimant the sum of $250 which, I think, would be a fair compensation for the services which would seem to come under provisions of the act, upon the principle of construction above contended for. Respectfully submitted, I. T. WILLIAMS, register in bankruptcy.

BLATCHFORD, *J.*—On evidence and a certificate bringing this case within the decision *In re Montgomery*, (3 *Benedict*, 364), I should follows that decision.

. April 5th, 1872.

The decision in the case of *Montgomery*, above referred to, is as follows: BLATCHFORD, *J.*—"If the assignee shall, in writing, approve of the payment of this bill out of the funds of this estate on the grounds set forth in the petition of Mr. Olney, and in the certificate of the register, and of the amount of the charges, an order will be made allowing its payment."